**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **MAUSOOM SHAH HUSSAIN,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **CAUSE NO. EP-26-CV-525-KC** |
| | § | |
| **PAMELA BONDI et al.,** | § | |
| | § | |
| **Respondents.** | § | |

## ORDER

On this day, the Court considered Mausoom Shah Hussain's Petition for a Writ of Habeas Corpus ("Petition"), ECF No. 1.

## I.      BACKGROUND

Hussain is a citizen of Afghanistan who entered the United States "decades ago." *Id.* ¶ 2. He was ordered removed from the United States on October 29, 2009. *Id.* ¶ 3. Respondents, however, were unable to remove Hussain and, instead, released him under an order of supervision ("OSUP") in 2010 because "there was no significant likelihood of his removal to Afghanistan in the reasonably foreseeable future." *Id.* ¶ 4; *see also* 1st Yague Decl. ¶ 11, ECF No. 6-1. Hussain has "complied with all check-in requirements and made sure to update his address with ICE every time he moved." *Id.* ¶ 10. On February 3, 2026, Hussain was re-detained by immigration authorities "despite having done nothing wrong and remaining in compliance with his [OSUP]." *Id.* ¶ 11. According to Hussain, "Respondents have yet to submit a travel document request to the embassy of Afghanistan or any other country on [his] behalf." *Id.* ¶ 13.

On February 20, 2026, Hussain filed this Petition, challenging his continued detention as unlawful and seeking his release.  *Id.* ¶¶ 94–113; *id.* at 29.  On February 24, the Court ordered Respondents to show cause why the Petition should not be granted.  Show Cause Order 2–3, ECF No. 3.  In answer to the Court's Show Cause Order, Respondents filed a Response, ECF No. 6, in which they argued that Hussain's continued detention is lawful because "[t]here is no good reason to believe that removal in the reasonably foreseeable future is unlikely."  Resp. 4.  They explained that "[a]t [Hussain's] regular reporting to ERO, [he] was required to provide updates and show progress in obtaining his passport or travel documents, but either failed to provide an update or failed to show any progress."  *Id.* at 2.  Thus, "[Hussain] has been served with a warning for failure to depart, and for failing to assist in obtaining travel documents."  *Id.* And that, "[c]urrently, travel documents are being sought."  *Id.*

The Court noted that Respondents "fail[ed] to address a key fact alleged by Hussain— that another 'systemic barrier to [his] repatriation to Afghanistan' is the fact that 'the current de facto and de jure government of Afghanistan is the foreign terrorist organization, the Taliban, which the United States does not recognize as a legitimate government.'"  March 4, 2026, Order 1–2, ECF No. 7.  Thus, the Court ordered Respondents to file a supplemental response addressing the likelihood of Hussain's removal to Afghanistan given the Taliban's control and the cessation of diplomatic relations between the United States and Afghanistan.  *Id.* at 2.

On March 11, 2026, Respondents filed a Supplemental Response, ECF No. 8, to which they attached the Declaration of Supervisory Detention and Deportation Officer Cecilia Yague ("2d Yague Decl."), ECF No. 8-1.  Yague explained that that "ERO will need to request a transportation letter from the Afghanistan Embassy in Doha, Qatar to remove the petitioner to Afghanistan."  2d Yague Decl. ¶ 5.  And, that this request can be made once travel documents

are obtained for Hussain.  *Id.* ¶ 6.  According to Yargue's previous declaration, attached to Respondents' initial Response, "[o]n February 20, 2026, an ERO officer in El Paso, Texas filled out a Form 217 'Information for Travel Document or Passport'; an internal document used by ERO to submit travel document requests."  1st Yague Decl. ¶ 24.  Yague also indicated that Respondents were pursuing third country removal options and soliciting Hussain to self deport.  *See id.* ¶¶ 6–8.

The Court thus gave Respondents an additional month to provide a status report detailing (1) whether the travel document request was submitted to the Afghanistan Embassy in Qatar, and if so, the date of submission, and if not, the anticipated timeline for submission; (2) if the travel document request was submitted, whether the request was approved, and if so, the date of approval, and if not, the anticipated timeline for approval; (3) if the travel document request was approved, whether the transportation letter request was submitted to the Afghanistan Embassy in Qatar, and if so, the date of submission, and if not, the anticipated timeline for submission; (4) if the transportation letter request was submitted, whether the request was approved, and if so, the date of approval, and if not, the anticipated timeline for approval; (5) whether any third countries were identified for Hussain's removal and the concrete steps taken to obtain travel documents for Hussain from those third countries; and (6) whether Hussain agreed to self-deport, and if so, to which country, and the expected timeline for his deportation and any obstacles.  Mar. 12, 2026, Order 2–3, ECF No. 9.

On April 13, Respondents filed a Second Response, ECF No. 10, to which they attached the Declaration of Acting Supervisory Detention and Deportation Officer Guadalupe Tello ("Tello Decl."), ECF No. 10-1.  According to Tello, "[o]nce all foreign identification documents are gathered, they will be submitted to the ERO attaché on or about May 4, 2026."  Tello Decl. ¶

5.  "The information will then be submitted to the State Department," who will then "work with the Qatari Ministry of Foreign Affairs, who in turn will work with the Embassy of the Islamic Emirates of Afghanistan (Taliban) in Doha, Qatar." *Id.* ¶ 7.  Respondents also informed the Court that "[t]here is no indication that [Hussain] has agreed to self-deport or that a third country has been identified at this time."  2d Resp. 1.

Because Respondents were collecting the required information to be submitted to the State Department and provided a deadline by which they would do so, the Court found it appropriate to order another status report to be filed by June 15.  Apr. 14, 2026, Order 2–3, ECF No. 11.

On June 15, Respondents filed a Third Response, ECF No. 14, to which they attached the Declaration of Deportation Officer Danny Alaniz ("Alaniz Decl."), ECF No. 14-1.  According to Alaniz, on May 4, 2026, the certificate of identity was submitted internally within DHS to the ERO attaché.  Alaniz Decl. ¶ 6.  Respondents, however, did not provide any information on whether the certificate of identity had been submitted to the State Department or whether a request had been made to the Embassy in Qatar for issuance of a transportation letter— information they had been ordered to provide.  *See generally id.*; 3d Resp.; Apr. 14, 2026, Order 2–3.

The Court thus ordered Respondents to file a status report in two weeks specifically stating whether they submitted the identification documents to the State Department and detailing the State Department's efforts to obtain a transportation letter on Hussain's behalf.  June 16, 2026, Order 2–3, ECF No. 15.  The Court cautioned Respondents that "a failure to submit the identification documents to the State Department or to clearly explain whether they have done so, and if not, why, may result in an order for Hussain's release."  *Id.* at 2.

Respondents have now filed a Fourth Response, ECF No. 16, to which they attach the Declaration of Deportation Officer Anais Gomez-Navarrete ("Gomez-Navarrete Decl."), ECF No. 16-1. According to Gomez-Navarrete, "HQ-RIO advised ERO El Paso that ICE continues to work with the State Department given that ICE does not maintain direct diplomatic relations with the Government of Afghanistan." Gomez-Navarrete Decl. ¶ 6. And that "ICE works through the State Department and Qatari Ministry of Foreign Affairs on requests." *Id.* ¶ 7. Gomez-Navarrete reiterates that individuals can be removed to Afghanistan with a valid transportation letter, but states that there are no specific timelines for issuance of such transportation letters. *See id.* As for Hussain's case, Gomez-Navarrete states that "HQ-RIO has not notified ERO El Paso of any obstacles currently." *Id.* Neither Respondents nor Gomez-Navarrete affirmatively state whether Hussain's certificate of identity was submitted to the State Department. *See generally id.*; 4th Resp. Nor do they state whether the State Department has made any contact with the Qatari Ministry of Foreign Affairs on behalf of Hussain to obtain a transportation letter. *See generally* Gomez-Navarrete Decl.; 4th Resp.

## II.    ANALYSIS

Hussain seeks a writ of habeas corpus for his immediate release from custody, arguing that his continued detention is unlawful. Pet. ¶¶ 94–113; *id.* at 29.

This Court has previously held that a § 1231(a) detainee subject to re-detention after their release pursuant to an OSUP is not limited to a *Zadvydas* claim. *See Nguyen v. Bondi*, No. 3:25-cv-323-KC, 2025 WL 3120516, at *4 (W.D. Tex. Nov. 7, 2025) (citing *Trejo v. Warden of ERO El Paso E. Montana*, --- F. Supp. 3d ----, 2025 WL 2992187, at *6–7 (W.D. Tex. Oct. 24, 2025)). By virtue of the liberty interest obtained through their release, a § 1231(a) re-detainee can also bring a distinct procedural due process claim. *See id*. In *Nguyen*, this Court found a procedural

due process violation where a Vietnamese national subject to a final order of removal, who had previously been deemed unremovable to Vietnam and released, was re-detained without an individualized assessment of his flight risk and dangerousness by an Immigration Judge ("IJ"). *See id.* at \*5–8.  The balance of the *Mathews v. Eldridge* factors weighed in favor of Nguyen because he had a strong liberty interest, the risk of erroneous deprivation was high and easily ameliorated through a bond hearing, there was little evidence that he was a flight risk or danger to the community, and the Government failed to demonstrate that his removal was significantly likely in the reasonably foreseeable future.  *See id.*  Although the Government had submitted Nguyen's travel document request to Vietnam, it failed to provide an expected timeline for approval, did not attach copies of the submitted request, and the statistics it provided regarding successful removals of Vietnamese nationals did not identify whether any of these individuals, like Nguyen, were pre-1995 refugees.  *See id.* at \*7.  Thus, after approximately three and a half months in detention, this Court ordered Respondents to either provide Nguyen with a bond hearing or release him.  *See id.* at \*1, 4, 8.

Here, Hussain has been detained for nearly five months and Respondents, despite being ordered to do so, do not affirmatively state whether Hussain's certificate of identity has been submitted to the State Department.  This is the next step in the process after submission to the attaché, which Respondents concede occurred nearly two months ago.  Accordingly, it appears that Respondents have not submitted the required information to the State Department in order for the State Department to coordinate with the Qatari Foreign Ministry of Affairs to request a transportation letter from the Afghanistan Embassy in Qatar on behalf of Hussain.  *See generally* Gomez-Navarrete Decl.; 4th Resp.; Alaniz Decl.; 3d Resp; Tello Decl.; 2d Resp.; 2d Yague Decl.; Suppl. Resp.; 1st Yague Decl.; Resp.  And they provide no expected timeline for

6

submission, let alone a timeline for the State Department to contact the Qatari Foreign Ministry of Affairs or for actual issuance of the transportation letter and Hussain's removal from the country. *See generally* Gomez-Navarrete Decl.; 4th Resp. In *Nguyen*, this Court found that, "[w]hile it may be that Nguyen's removal to Vietnam is now possible, where it was previously impossible, Respondents have not shown that his removal is significantly likely to occur in the reasonably foreseeable future." *See Nguyen*, 2025 WL 3120516, at *7. In Hussain's case, while Respondents have indicated that it is possible for an individual to be removed to Afghanistan, they have failed to demonstrate that Hussain's removal to Afghanistan is significantly likely to occur in the reasonably foreseeable future.

Thus, at this time, Respondent's interest in effectuating Hussain's removal order is weak. *See id.* at *7–8. And any interest in preventing flight or danger is similarly weak, as Hussain was previously released in 2010 on an OSUP. *See id.* at *6; 1st Yague Decl. ¶ 11. Although Hussain was subsequently convicted of a disorderly conduct misdemeanor in 2016, Respondents chose not to revoke his OSUP at that time and he was only re-detained in February 2026 due to a change in immigration policy, not as a result of this criminal conviction. *See* 1st Yague Decl. ¶¶ 5, 23. Moreover, any concerns regarding Hussian's dangerousness or flight risk would be squarely addressed at a bond hearing. *See Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 686–87 (W.D. Tex. 2025) (citation omitted). The Government's interest in re-detaining Hussain is thus outweighed by his strong liberty interest from more than sixteen years of liberty in the United States, and the fact that the high risk of erroneous deprivation could be easily ameliorated by a bond hearing. *See Nguyen*, 2025 WL 3120516, at *5–6.

While there is no doubt that Hussain is subject to a final order of removal and that Respondents are entitled to remove him from the United States, when they have failed to take the

necessary steps to do so, they cannot continue to detain Hussain without providing him with an individualized custody determination.  Of course, if Hussain is granted bond or otherwise released from custody, nothing prevents Respondents from later effectuating Hussain's removal in the event that they are able to obtain a transportation letter from Afghanistan on his behalf.

**III.    CONCLUSION**

For the foregoing reasons, the Petition for Writ of Habeas Corpus, ECF No. 1, is **GRANTED IN PART**.  The Court **ORDERS** that, **on or before July 8, 2026**, Respondents shall either: (1) provide Hussain with a bond hearing before an IJ, at which the Government shall bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, Hussain's continued detention; or (2) release Hussain from custody, under reasonable conditions of supervision.

**IT IS FURTHER ORDERED** that, **on or before July 8, 2026**, Respondents shall **FILE** notice informing the Court whether Hussain has been released from custody.  If Hussain has not been released from custody, Respondents shall inform the Court whether and when a bond hearing was held in accordance with the preceding paragraph.  Respondents shall further inform the Court, in detail, of the reasons for the IJ's decision.

**IT IS FURTHER ORDERED** that if Hussain is released from custody, Respondents shall **RETURN** all of his personal property in their custody, without which his liberty interest will be affected, to him upon release.  Such property includes, but is not limited to, identification documents.

**There will be no extensions of the July 8, 2026, deadlines**, unless they fall on a weekend or a holiday, in which case, the deadlines are extended to the following business day.

8

**Respondents are CAUTIONED that a proceeding in which bond is denied by the IJ for lack of jurisdiction does not satisfy Respondents' obligation to provide a bond hearing in compliance with this Order, and therefore requires release from custody.**

**SO ORDERED**.

**SIGNED this 1st day of July, 2026.**

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE